# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| ALEXANDER OCASIO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:16-cv-00956-GMN-NJK |
| vs. | ) | |
| | ) | **ORDER** |
| WILLIAM PEREZ, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court is the Motion to Dismiss, (ECF No. 23), filed by Defendants William Perez ("Officer Perez"), Corey Gribbin ("Officer Gribbin") (collectively the "Officers"), Debrah Tanner ("Tanner"), and Dr. Bradley Gruner ("Gruner") (collectively "Defendants"). Pro se Plaintiff Alexander Ocasio ("Plaintiff")[1] filed a Response, (ECF No. 28), and Defendants filed a Reply, (ECF No. 30). For the reasons discussed below, the Court GRANTS Defendants' Motion to Dismiss.

## I.     BACKGROUND

This case arises from Plaintiff's arrest for stalking a sixteen-year-old female student, Alexis Clark ("Clark"), while he was a student at the College of Southern Nevada's West Charleston Campus ("CSN") located in Las Vegas, Nevada. (*See* Am. Compl. 2:13–21, ECF No. 15). Plaintiff alleges he met Clark during his final semester at CSN when he was forty-six years old. (*Id.* 2:23–25, 3:3–7). According to Plaintiff, "[t]he two students voluntarily exchanged names and phone numbers and communicated sporadically and infrequently primarily by means of telephonic text messaging, at all times while off campus." (*Id.* 3:10–13).

---

[1] In light of Plaintiff's status as a pro se litigant, the Court has liberally construed his filings, holding them to standards less stringent than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Through text messages, "Plaintiff began to flirt with [Clark]." (*Id.* 3:26–27). Ultimately, Clark asked Plaintiff to "[l]eave [her] alone," and Plaintiff alleges that he did so. (*Id.*).

On April 27, 2014, Plaintiff alleges that he visited the CSN computer lab and coincidentally sat "two seats away" from Clark. (*Id.* 4:1–7). Plaintiff alleges that after working for "30 minutes or so," Clark left the building, followed by Plaintiff "[a]bout 2 minutes later." (*Id.* 4:13–18). Believing that Plaintiff was following her, Clark called the Las Vegas Metropolitan Police Department ("LVMPD") and filed a complaint with Officer Perez, a CSN police officer, regarding Plaintiff's behavior the next day. (*Id.* 5:5–7). On April 28, 2014, Plaintiff alleges that he was arrested on an unrelated charge and released on May 1, 2014. (*Id.* 5:19–6:3). On the morning of his release at approximately 3:30 a.m., Plaintiff alleges that, unbeknownst to him, his cell phone called Clark's number. (*Id.* 6:4–12).

Later that day, as Plaintiff "was in the process of moving out of his apartment," Officers Perez and Gribbin, accompanied by LVMPD officers, arrested Plaintiff outside of Plaintiff's apartment for stalking. (*Id.* 7:6–9, 7:24–8:6). Following his arrest, Plaintiff alleges that Officer Gribbin, also a CSN police officer, "forwarded his police report concerning the arrest of Plaintiff . . . to [Tanner] the Compliance Investigator II of the Affirmative Action Office of the College of Southern Nevada at the West Charleston Campus and to [Gruner] (student conduct officer) the Assistant Vice President of Student Services for administrative action to be taken against the Plaintiff." (*Id.* 9:15–23). On May 14, 2014, Plaintiff appeared before Tanner regarding Clark's sexual harassment complaint against him, and on May 27, 2014, Plaintiff before Gruner regarding the charges of student misconduct against him. (*Id.* 12:26–28, 13:6–8, 16:20–23).

Plaintiff alleges various constitutional violations against the Officers for their handling of his arrest as well as Tanner and Gruner for their handling of the student misconduct

complaints against him. (*See generally id.*).  In the instant Motion, Defendants seek dismissal of Plaintiff's claims against them.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) (emphasis added).  In order to survive a motion to dismiss, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . .  However, material which is properly submitted as part of the

complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted).  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend.  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

### B.     Qualified Immunity

Qualified immunity protects defendants "from suit" and is not "a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009).  Defendants can move for qualified immunity at the pleadings stage because "the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims' against government officials [will] be resolved prior to discovery . . . ." *Id.* at 231 (quoting *Anderson v. Creighton*,

483 U.S. 635, 640 n.2 (1987)); *cf. Butz v. Economou*, 438 U.S. 478, 506 (1978) (explaining that qualified immunity is vital "to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority").

The qualified immunity test is a two-pronged inquiry in which courts must consider whether the facts alleged "make out a violation of a constitutional right" and whether "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 816 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  The "relevant, dispositive inquiry is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 194–95; *see also Anderson*, 483 U.S. at 640 ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.").  A court may consider the two prongs of the qualified immunity inquiry in any order it pleases. *Pearson*, 555 U.S. at 234, 239.

Under the first prong, courts consider whether the alleged facts, taken in the light most favorable to plaintiff, show that defendants' conduct violated a constitutional right. *Saucier*, 533 U.S. at 201.  In resolving this first inquiry, the court determines whether the alleged facts, taken in the light most favorable to the plaintiff, show that defendants were reasonable in their belief that their conduct did not violate the Constitution. *Wilkins v. City of Oakland*, 350 F.3d 949, 955 (9th Cir. 2003).  In other words, even if the defendants' actions did violate the Fourth Amendment, a "reasonable but mistaken belief that [their] conduct was lawful would result in the grant of qualified immunity." *Id.*  Qualified immunity thus "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Under the second prong, the court determines "whether the right was clearly established" and applies an "objective but fact-specific inquiry." *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007); *see Saucier*, 533 U.S. at 202.  It is not enough that the general rule is

established. *Id.*  The critical question is whether "the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Saucier*, 533 U.S. at 202.  "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*  The court's "task is to determine whether the preexisting law provided the defendants with fair warning that their conduct was unlawful." *Elliot–Park v. Manglona*, 592 F.3d 1003, 1008 (9th Cir. 2010).

## III.   DISCUSSION

The Court considers Defendants' Motion to Dismiss with respect to (1) the Officers, (2) Tanner, and (3) Gruner in turn.

### A.   Officers Perez and Gribbin

Plaintiff alleges that the Officers "falsely arrest[ed] and falsely imprisoned the Plaintiff . . . unreasonably without any objective investigation and without probable cause in violation of the Fourth Amendment of the United States Constitution." (Am. Compl. 2:14–19, ECF No. 15). Plaintiff also alleges that the Officers arrested him because Plaintiff is "a person of color, a minority of Puerto Rican decent" in violation of the Equal Protection Clause of the Fourteenth Amendment. (*Id.* 2:20–22).  The Court first considers Plaintiff's allegations under the Fourth Amendment and then turns to his Fourteenth Amendment claim.

#### 1.   *Fourth Amendment*

The Officers move to dismiss Plaintiff's claim that his arrest violated the Fourth Amendment on the grounds of qualified immunity.  The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  "[A]n arrest is lawful . . . only if it is accompanied by probable cause to believe that the arrestee has committed, or is committing, an offense." *Conner v. Heiman*, 672 F.3d 1126, 1132 (9th Cir. 2012).  An officer is

entitled to qualified immunity for unlawful arrest if he had probable cause or if "it is *reasonably arguable* that there was probable cause for the arrest." *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1076 (9th Cir. 2011).  "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).

"Whether probable cause exists depends 'on the totality of facts . . . .'" *Sialoi v. City of San Diego*, 823 F.3d 1223, 1232 (9th Cir. 2016) (quoting *Lopez*, 482 F.3d at 1073).  While probable cause does not require law enforcement officers to support their seizure with "certainty or even a preponderance of the evidence," officers must be able to conclude that there is a "fair probability" that the defendant committed a crime, *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006), and "may not disregard facts tending to dissipate probable cause," *Sialoi*, 823 F.3d at 1232.  "The presence of a factual dispute regarding a victim's complaint . . . does not defeat probable cause if: 1) the victim's statements are sufficiently definite to establish that a crime has been committed; and 2) the victim's complaint has been corroborated by *either* the surrounding circumstances *or* other witnesses." *See Peng v. Mei Chin Penghu*, 335 F.3d 970, 976 (9th Cir. 2003) (emphasis added).

Taking Plaintiff's allegations as true and making all reasonable inferences in his favor, the Amended Complaint alleges facts demonstrating that the Officers acted with probable cause in arresting him.  Plaintiff alleges that Clark filed a complaint with Officer Perez alleging that "[P]laintiff sent [Clark] explicit sexual messages about himself and her body" and that on April 27, 2014, Plaintiff followed Clark on the CSN campus. (Am. Compl. 5:4–10).  Further, Plaintiff attaches to his Amended Complaint the case report in which Officer Gribbin repeats Clark's statement to him that, following the phone call she received from Plaintiff's cell phone number on May 1, 2014, at 3:30 a.m., she felt "terrorized and intimidated." (Ex. 2 to Am. Compl., ECF

No. 15).[2]  Finally, Officer Gribbin's case report concludes that based on Clark's subjective feeling of fear, his review of Plaintiff's text messages to Clark, and Clark's willingness to press charges against Plaintiff, probable cause existed to arrest Plaintiff for stalking in violation of NRS § 200.575.[3]  (*Id.*).

Plaintiff does not allege any facts suggesting that the Officers had reason to suspect that Clark's statements were false; instead, Plaintiff makes conclusory allegations that the Officers "failed to objectively investigate the complaint lodged by Alexis Clark on April 28, 2014." (Am. Compl. 10:23–28).  However, the Court need not accept as true "a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555, nor allegations that contradict material attached to the complaint, *Sprewell*, 266 F.3d at 988–89.  Because Plaintiff's allegations regarding the Officers' investigation and arrest of Plaintiff demonstrate that "a reasonable police officer could have believed that his or her conduct was lawful," *Krainski v. Nevada*, 616 F.3d 963, 969 (9th Cir. 2010), the Court concludes that qualified immunity applies.[4]  *See also Peng*, 335 F.3d at 979.  The Court therefore DISMISSES Plaintiff's Fourth Amendment claim against the Officers with prejudice.

---

[2] Under Nevada law, a person commits the crime of stalking by engaging in a "course of conduct that cause[s] the victim to be reasonably in fear of death or substantial bodily harm." *Ellis v. State*, No. 67024, 2015 WL 9465277, at *2 (Nev. Dec. 18, 2015); *see also* NRS § 200.575(1).

[3] "A court may . . . consider certain materials—documents attached to the complaint, documents incorporated without reference to the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003).

[4] Plaintiff also alleges that because the Officers arrested him outside of the CSN campus, the Officers acted "outside the[ir] geographic jurisdiction" rendering the arrest "unreasonable and . . . in violation of . . . NRS 289.350." (Am. Compl. 7:10–14).  Pursuant to this statute, CSN police officers may only exercise their authority "[u]pon the campuses of the Nevada System of Higher Education." NRS § 289.350(1)(a).  However, this restriction does not apply when CSN police officers act "in accordance with interlocal agreements entered into with other law enforcement agencies . . . [f]or mutual assistance specifically agreed upon with the other law enforcement agencies." NRS § 289.350(1)(d), (2)(d).  Nevada law implies an interlocal agreement even where none exists when "a law enforcement agency requests the assistance of another law enforcement agency which responds to the request." NRS § 277.035(1).  Accordingly, because the Officers acted with the assistance of LVMPD officers, their arrest of Plaintiff did not violate NRS § 289.350.

### 2.   *Fourteenth Amendment*

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws," U.S. Const. amend. XIV, § 1, and prevents "official conduct discriminating on the basis of race," *Washington v. Davis*, 426 U.S. 229, 239 (1976).  To state a claim for violation of Equal Protection under the Fourteenth Amendment, a plaintiff must allege that the individual defendants, acting under color of state law, "acted in a discriminatory manner and that the discrimination was intentional." *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000).  A "long line of Supreme Court cases make clear that the Equal Protection clause requires proof of discriminatory intent or motive." *Navarro v. Block*, 72 F.3d 712, 716 (9th Cir. 1995).

Plaintiff fails to set forth any factual allegations that a specific defendant intentionally treated Plaintiff differently than any other similarly situated individual on the basis of his race. Instead, Plaintiff merely alleges that the Officers were motivated by discriminatory animus because Plaintiff is a male of Puerto Rican descent.[5]  (Am. Compl. 2:13–22, 3:8–9).  However, merely claiming that a plaintiff and a defendant are of a different race, combined with a disagreement as to the reasonableness of the defendant's conduct toward the plaintiff, is insufficient to show a violation of the Equal Protection Clause. *See, e.g.*, *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948 (9th Cir. 2003), *overruled on other grounds by Edgerly v. City & County of San Francisco*, 599 F.3d 946, 956 n.14 (9th Cir. 2010).  Without more, Plaintiff's conclusory allegation is insufficient to raise an inference that the Officers acted with a discriminatory purpose. *See id.* at 949.  The Court therefore DISMISSES Plaintiff's Equal Protection claims arising under the Fourteenth Amendment against the Officers without prejudice.

---

[5] Plaintiff's Amended Complaint includes vague statements that Gruner was also motivated by a racial animus against Plaintiff. (*See* Am. Compl. 20:28–21:2).  To the extent Plaintiff attempts to assert an Equal Protection violation against Gruner, these allegations similarly fall short and are DISMISSED without prejudice.

**B.     Tanner**

Plaintiff alleges that Tanner, "a Compliance Officer II of the Affirmative Action Office of the College of Southern Nevada- West Charleston Campus," violated the Fifth and Fourteenth Amendments by depriving Plaintiff of "liberty, property, due process, and the equal protection of the laws." (Am. Compl. 12:20–25).

### 1.     *Fifth Amendment*

The Fifth Amendment to the United States Constitution states in relevant part that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend V.  Plaintiff's claim under the Fifth Amendment "is plainly foreclosed by the Constitution" because Tanner is a state official, "and the Fifth Amendment's due process clause only applies to the federal government." *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008) (*citing Betts v. Brady*, 316 U.S. 455, 462 (1942)); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) ("The Due Process Clause of the Fifth Amendment and the equal protection component thereof apply only to actions of the federal government—not to those of state or local governments.").  Thus, because Tanner is alleged to be a state actor and not a federal actor, Plaintiff's Fifth Amendment claim must fail.  Accordingly, the Court DISMISSES Plaintiff's due process claim against Tanner pursuant to the Fifth Amendment with prejudice.

### 2.     *Fourteenth Amendment*

Turning to his Fourteenth Amendment claim, Plaintiff alleges that "Tanner sent the Plaintiff notification that a complaint of sexual harassment ha[d] been filed against him" and "stated that her office was conducting an investigation into the matter." (Am. Compl. 12:26–13:2).  Further, Plaintiff alleges that he appeared at the interview, after which "the matter was resolved favorably for the Plaintiff." (*Id.* 13:6–8, 15:28).  Specifically, Tanner determined that there was "insufficient evidence" to support the allegation of sexual harassment. (*See* Ex. 7 to

Am. Compl., ECF No. 15).  These allegations completely belie Plaintiff's conclusory claim that Tanner "deprived the Plaintiffs [sic] constitutional rights to liberty, property, without due process and the equal protection of the laws." (*Id.* 16:1–3).  Plaintiff does not allege that Tanner deprived him of a constitutionally protected liberty or property interest, and in any event, Plaintiff alleges that Tanner provided him notice and a hearing.

Although these defects may be cured by amendment, the Court finds that dismissal with prejudice is appropriate because Plaintiff's claims against Tanner are barred by the statute of limitations.  Plaintiff filed the Complaint against the Officers and Gruner on April 27, 2016 before Nevada's two-year statute of limitations for personal injury actions ran, sometime between May 1, 2016, and May 30, 2016. *See* NRS § 11.190(4)(e); (*See* Resp. 14:16–15:3, ECF No. 28); (MTD 9:16–19); (Pl.'s Notice of Withdrawal 1:23, ECF No. 2).  The § 1983 claim against these Defendants was therefore timely filed. *See McDougal v. County of Imperial*, 942 F.2d 668, 672 (9th Cir. 1991) (citing *Wilson v. Garcia*, 471 U.S. 261, 279–280 (1985) (holding that the statute of limitations for § 1983 claims is that for personal injury claims under the law of the state where the injury occurs)).

In contrast, Plaintiff did not name Tanner as a party until he filed the Amended Complaint on July 8, 2016, after the statute of limitations had run. (*See* Am. Compl.). Plaintiff's claims against Tanner will only relate back to the date of the Complaint if he met the requirements of Nevada Rule of Civil Procedure 10(a) by:

> (1) pleading fictitious or doe defendants in the caption of the complaint; (2) pleading the basis for naming defendants by other than their true identity, and clearly specifying the connection between the intended defendants and the conduct, activity, or omission upon which the cause of action is based; and (3) exercising reasonable diligence in ascertaining the true identity of the intended defendants and promptly moving to amend the complaint in order to substitute the actual for the fictional.

*Nurenberger Hercules-Werke GMBH v. Virostek*, 822 P.2d 1100, 1106 (Nev. 1991); *see also Merritt v. County of Los Angeles*, 875 F.2d 765, 768 (9th Cir. 1989) ("[T]he relation back provisions of state law, rather than Rule 15(c), govern a federal cause of action pursuant to 42 U.S.C. § 1983."). Rule 10(a) cannot avail Plaintiff here, however, because this is not a case where "despite reasonable diligence, the true identity of culpable parties is uncertain or unknown to plaintiff." *Nurenberger*, 822 P.2d at 1103. Indeed, Plaintiff admits that his original Complaint failed to name Tanner not because he lacked information to discover Tanner's identity, but because "Plaintiff did not have his notes with him at the time he drafted the complaint and was writing it off the top of his head." (Resp. 14:19–21).

Consequently, Plaintiff cannot invoke Rule 10(a) to avoid the statute of limitations as to Tanner, and the Court therefore DISMISSES Plaintiff's claims against Tanner with prejudice.

## C.    Gruner

Plaintiff also asserts due process violations pursuant to the Fifth and Fourteenth Amendments against Gruner.

### 1.    *Fifth Amendment*

As discussed with respect to Tanner, *supra*, Plaintiff's Fifth Amendment due process claims against Gruner, a state official, are foreclosed. *See Bingue*, 512 F.3d at 1174 ("The Fifth Amendment's due process clause only applies to the federal government."). The Court therefore DISMISSES this claim against Grunner with prejudice.

### 2.    *Fourteenth Amendment*

Turning to Plaintiff's due process claims under the Fourteenth Amendment, Plaintiff alleges that he received a letter notifying him of three charges of student misconduct in violation of the CSN Student Conduct Code: (1) sexual harassment; (2) disruption; and (3) disorderly conduct. (Am. Compl. 17:17–20). Further, Plaintiff alleges that he participated in "an interview meeting concerning [these claims of misconduct]" before Gruner. (*Id.* 16:20–25).

According to Plaintiff, Gruner dismissed the charges of sexual harassment and disruption as "inconclusive." (*Id.* 17:21–24).  However, Gruner "found Plaintiff responsible for 'Disorderly Conduct' because Alexis Clark was offended by the text messages Plaintiff had sent her." (*Id.* 19:1–3).  Further, Plaintiff alleges that Gruner "found him responsible for a charge of 'Trespassing,'" but "Plaintiff was never given notice that he had a charge of 'Trespassing' pending against him." (*Id.* 19:6–12).

To resolve the charges against him, Plaintiff alleges that he voluntarily agreed to an "Informal Resolution" with Gruner which "placed [Plaintiff] on Academic Probation for a period of a year . . . and prohibited any and all contact with Alexis Cark for one year." (*Id.* 19:13–17).  Plaintiff also alleges that although "[t]he matter of the punishment was moot for Plaintiff" because he graduated,

> [t]he matter tarnished the Plaintiff's reputation, integrity, standing, and honor within the College of Southern Nevada and Plaintiff could not use his achievements to network with other similarly graduating students for networking and future opportunities. The matter destroyed Plaintiff's efforts to succeed as a Paralegal within the Community. It stigmatized the Plaintiff's character in every social context within the College.

(*Id.* 19:17–18).  Nevertheless, Plaintiff states that "the matter resolved favorably for the Plaintiff." (*Id.* 21:4–5).

These allegations are almost identical to the plaintiff's allegations in *Krainski*.  There, the plaintiff alleged that "the defendants damaged her reputation by charging her with violations of the Student Conduct Code; finding her 'Responsible' of those charges; and 'tarnishing [her] educational transcript and record.'" *Krainski*, 616 F.3d at 971.  The Ninth Circuit held that "[s]uch allegations amount to mere reputational injury . . . and, without more, do not rise to the level of a deprivation of a constitutionally protected liberty or property interest." *Id.*  As a result, the Ninth Circuit "easily conclude[d] that the law was not clearly

established at the time so as to put a reasonable official on notice that the actions might violate the constitution." *Id.* Likewise, the Court finds that in light of Plaintiff's allegations that he received notice and a hearing, as well as Plaintiff's failure to allege a violation of a constitutionally protected liberty or property interest, Gruner is entitled to qualified immunity with regard to this cause of action. Consequently, the Court DISMISSES Plaintiff's Fourteenth Amendment due process claims against Gruner with prejudice.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, (ECF No. 23), is **GRANTED** as follows:

a. Plaintiff's due process claim under the Fourth Amendment is **DISMISSED with prejudice** against the Officers;

b. Plaintiff's Equal Protection claims under the Fourteenth Amendment against the Officers and Gruner are **DISMISSED with leave to amend**;

c. Plaintiff's claims are **DISMISSED with prejudice** against Tanner; and

d. Plaintiff's due process claims under the Fifth and Fourteenth Amendments are **DISMISSED with prejudice** against Gruner.

If Plaintiff elects to file a second amended complaint, Plaintiff shall have twenty-one days from the filing date of this Order to do so. Failure to file a second amended complaint by this date shall result in the dismissal of Plaintiff's claims dismissed herein with prejudice.

**DATED** this __22__ day of March, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Judge